FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

04 APR 23 AM 8: 14

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| MALIK J. SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CV 03-J-1398-S |
| | ) | |
| TALENT TREE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

ENTERED

APR 2 3 2004

**MEMORANDUM OPINION**

Pending before the court is defendant Talent Tree, Inc.'s ("Talent Tree" or

"defendant") motion for summary judgment (doc. 9). The court has reviewed the

motion and the parties' other submissions. Based upon this review, the court is of the

opinion that the motion is due to be granted.

**I. Background**

Defendant hired plaintiff as a sales representative in 1998. (Ex. 2 to Plaintiff's

Response; Plaintiff's Depo. at 30.)  Brenda Harris ("Harris") supervised plaintiff

during the entire tenure of his employment with defendant. (Plaintiff Depo. at 10.)

In 1999, plaintiff won sales contest awards. (Exs. 6 & 7 to Plaintiff's Response.)  In

January 2000, plaintiff was promoted to account manager. (Ex. 4B to Defendant's

26

Evidentiary Submission.) During 2000, plaintiff received praise for his performance, especially for his role in obtaining two large clients. (Exs. 8-10 to Plaintiff's Response.)  In January 2001, plaintiff was promoted to branch manager of the Birmingham, Alabama branch. (Harris Aff., ¶ 7.)  In 2001, plaintiff continued to receive praise and awards as a result of his performance. (Exs. 11-17 to Plaintiff's Response.)  On May 28, 2002, plaintiff signed an evaluation completed by Harris in which plaintiff received average ratings.  Plaintiff did not receive a raise that year but the payroll form noted that his manager reported his rating as exceeds requirements. (Ex. 19 to Plaintiff's Response.)

In November 2002, Harris was promoted to Regional Vice President. (Harris Depo. at 52.)  As a result, a district manager's position was to be created to manage defendant's offices in Alabama. (Harris Depo. at 138-9.)  Harris used a recruiter employed with defendant to assist her with finding candidates for the new position. (Harris Depo. at 137-40.)[1]  Harris informed her staff at a regular meeting that she

---

[1]      Plaintiff takes issue with the fact that the new position was never posted internally.  Plaintiff cites to the protocol for defendant's predecessor, Initial Staffing Services:

> Positions should not be filled from outside sources until they have been posted for five working days.  This requirement can be waived with the approval of the Vice President - Support Services.

> The use of outside recruiters requires the approval of the Vice President - Support Services and the President.

would be looking for a district manager for Alabama. (Harris Depo. at 142, 170-71.)

Plaintiff remembers learning of the position in December of 2002 or January of 2003.

(Plaintiff Depo. at 16-17.)   Plaintiff submitted his resume and a letter to Harris

requesting consideration for the district manager's position. (Plaintiff's Depo. at 28;

Harris Depo. at 204.)  Plaintiff and Harris then had a discussion about the position.

(Plaintiff Depo. at 29-30; Harris Depo. at 204-6.)  In March 2003, Brian Greener

("Greener") was hired as the district manager for Alabama. (Harris Aff., ¶ 14.)  On

March 13, 2003, plaintiff filed a charge of race discrimination with the EEOC, which

was later rescinded. (Ex. 5 to Plaintiff's Depo.; Harris Depo. at 76-77.)  By letter

dated April 5, 2003, plaintiff gave notice of his resignation from defendant's employ.

(Ex. 1 to Plaintiff's Depo.; Harris Depo. at 211-12.)   Harris asked plaintiff to

reconsider his resignation, but plaintiff did leave defendant's employ on April 25,

2003. (Plaintiff Depo. at 77-8; Harris Depo. at 211-12; Ex. 4A to Def. Evidentiary

Submission.)

## II. Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if

---

(Ex. 20 to Plaintiff's Response.)  Plaintiff also cites to Initial Staffing Service's policy that existing employees are given preference over outside job candidates. (Ex. 21 to Plaintiff's Response.)  As indicated, these standards were actually the protocol for defendant's predecessor, Initial Staffing Services, and the last revision dates showing were in 1997.  There is no evidence to indicate that these standards were still in place in 2002 and 2003.  In fact, Harris testified that the internal posting was no longer being used. (Harris Depo. at 144-48.)

the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact

that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322 (1986).  As the Supreme Court has explained the summary

judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of
> summary judgment, after adequate time for discovery and
> upon motion, against a party who fails to make a showing
> sufficient to establish the existence of an element essential
> to that party's case, and on which that party will bear the
> burden of proof at trial.  In such a situation, there can be no
> genuine issue as to any material fact, since the complete
> failure of proof concerning an essential element of the non-
> moving party's case necessarily renders all other facts
> immaterial.

*Celotex Corp.*, 477 U.S. at 322-23.  The party moving for summary judgment always

bears the initial responsibility of informing the court of the basis for its motion and

identifying those portions of the pleadings or filings which it believes demonstrates

the absence of a genuine issue of material fact.  *Id.* at 323.  The burden then shifts to

the non-moving party to "go beyond the pleadings and by . . . affidavits, or by the

'depositions, answers to interrogatories, and admissions on file' designate 'specific

facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed.

R. Civ. Pro. 56(e).  In meeting this burden the non-moving party "must do more than

4

simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  That party must demonstrate that there is a "genuine issue for trial." Fed. R. Civ. Pro. 56(c); *Matsushita*, 475 U.S. at 587. *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case...A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000), quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995).  A factual dispute regarding a non-material issue will not preclude the defendant from succeeding on a motion for summary judgment. *Brown v. American Honda Motor Co.*, 939 F.2d 946, 953 (11th Cir. 1991).

## III. Legal Analysis

In his complaint, plaintiff alleges race discrimination in violation of Section 1981 in that plaintiff was not considered for a district manager position.  "To establish his prima facie case of discriminatory failure to promote, [plaintiff] must show that (1) he was in a protected group; (2) he was not given the promotion; (3) he

was qualified for the position and (4) someone outside of the protected group was given the position. *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1333 (11th Cir. 1998). Defendant does not contest that plaintiff is able to establish a prima facie case. Plaintiff is in a protected group as an African American. Plaintiff was not promoted to district manager and defendant does not dispute that he was qualified for the position. Greener is outside the protected group and was hired for the district manager position. Having established a prima facie case, plaintiff is entitled to a rebuttable presumption of discriminatory intent on the part of defendant.

"To rebut this presumption, [defendant] must advance legitimate, nondiscriminatory reasons why [plaintiff] was not considered for the job." *Standard*,161 F.3d at 1333-34. Defendant offers that Greener was more qualified for the position than plaintiff. (Harris Depo. at 175.) Defendant further offers that plaintiff was struggling with managing his current duties and defendant did not believe plaintiff was ready to take on the greater responsibilities associated with the district manager position. (Harris Depo. at 172-75, 178-80, 193-4.)

"Faced with these legitimate, nondiscriminatory reasons, [plaintiff] must now show that they are pretextual." *Standard*, 161 F.3d at 1334. Plaintiff first argues that pretext is evidenced by the fact that Harris deviated from the normal hiring procedure. This argument is flawed because plaintiff has failed to show that Harris deviated from

6

the normal hiring procedure.  As discussed in footnote 1 above, plaintiff relies on a policy promulgated by defendant's predecessor in 1997.  There is simply no evidence regarding the normal hiring procedure of defendant in 2002 and 2003.

Second, plaintiff argues that pretext is evidenced by the fact that he was more qualified than Greener.  This argument fails as well.  "[F]ederal courts do not sit to second-guess the business judgment of employers." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir. 1997).  Plaintiff must do more than simply show that he was better qualified than Greener; he must show that there was a blatant disparity in qualifications between himself and Greener. *Cofield v. Goldkist, Inc.*, 267 F.3d 1264, 1268 (11th Cir. 2001).  Plaintiff must show a disparity "so great that a reasonable fact-finder could infer that [defendant] did not believe [the person awarded the position] to be better qualified." *Cofield*, 267 F.3d at 1268.  There is simply no evidence of such a disparity.  Greener had worked in the staffing industry since 1996, while plaintiff had only worked in the staffing industry since 1998. (Ex. 22 to Plaintiff's Response.)  Greener had previous experience in positions such as district and area managers, while plaintiff did not. (Ex. 22 to Plaintiff's Response.)  Plaintiff even admits that Greener "had a good track record." (Plaintiff Depo. at 22.)  There is evidence to support Harris' belief that Greener was more qualified and none to support an inference that Harris believed otherwise.

Plaintiff has simply failed to produce evidence sufficient to permit a reasonable fact finder to disbelieve the defendant's proffered nondiscriminatory explanation that it did not consider plaintiff for the district manager position because of his problems with time management in the branch manager position. Further, plaintiff testified that no one employed by defendant ever said anything to him that made him think race was a consideration. (Plaintiff's Depo. at 9-11, 26.)  There is no evidence of any other complaints before plaintiff's. (Harris Depo. at 86-87, 90.)  Plaintiff admits that he does not know why Harris hired Greener. (Plaintiff's Depo. at 88-9.)  The Eleventh Circuit has recognized that "[t]he 'ultimate question' in a disparate treatment case is not whether the plaintiff established a prima facie case or demonstrated pretext, but 'whether the defendant intentionally discriminated against the plaintiff.'" *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1184 (11th Cir. 1984) (quoting *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711 (1983)). "In the absence of evidence pointing to race as the explanation for the employer's conduct, [the court] must hold that [the plaintiff] has failed to meet [his] burden of proof." *Nix*, 738 F.2d at 1187.  Because plaintiff cannot meet his burden, summary judgment is due to be granted in defendant's favor.

### IV. Conclusion

Having considered all of the evidence submitted by the parties, the court finds

that the plaintiff fails in his burden to show evidence sufficient to survive the defendant's motion for summary judgment. The court finds that, as a matter of law, the evidence is such that a reasonable jury could not return a verdict for the nonmoving party. *See Anderson*, 477 U.S. at 248.

Based upon the foregoing, defendant's motion for summary judgment (doc. 9) is **GRANTED**. Plaintiff's claims against the defendant shall be **DISMISSED WITH PREJUDICE** by separate order.

**DONE** and **ORDERED** this the _22_ day of April, 2004.

Inge P. Johnson
U.S. District Judge